NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMAN DATTA and 360 MARTECHSOL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TWIN TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. 18-15212 (KSH) (JAD) <br><br><br> OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Defendant's motion to transfer this matter to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1404(a). (ECF No. 14). In accordance with Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Defendant's application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Defendant's motion is **GRANTED**.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Aman Datta ("Datta") is the founder and owner of Plaintiff 360 MarTechSol, LLC ("360 MarTechSol") (collectively "Plaintiffs"), a technology consulting company. (Compl. ¶ 1, ECF No. 1). Datta provided technology consulting services to Defendant Twin Technologies, Inc. ("Twin Technologies" or "Defendant") from 2015 to 2018. Defendant consistently paid the invoices that Plaintiffs issued for Datta's performed consulting services. (Id. ¶¶ 12-24); (Id. Ex. 1). During 2017, however, Defendant allegedly experienced a "cash shortfall," leading the parties to negotiate a reduced annual salary for Datta, with the opportunity for Datta to earn bonuses to

make up the difference. (Id. ¶¶ 26-28). In December of 2017, 360 MarTechSol invoiced Defendant for $326,924.00 for consulting services that Datta performed from January 1, 2017, through December 31, 2017. (Id. ¶ 30); (Id. Ex. 2). Defendant allegedly has not paid this invoice. (Id. ¶ 30).

Datta continued working for Defendant until June of 2018, after which 360 MarTechSol invoiced Defendant for $137,308.00 for consulting services that Datta performed from January 1, 2018, through June 30, 2018. (Id. ¶¶ 31-33); (Id. Ex. 2). Defendant allegedly has not paid this invoice. (Id. ¶ 33). Plaintiffs now seek to recover $419,232.00 in unpaid invoices, plus additional unpaid compensation and bonuses, by bringing the following claims against Defendant: breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, and account stated. (See generally id.).

Plaintiffs initiated this action in the Superior Court of New Jersey on September 21, 2018. (Notice of Removal, ECF No. 1). Defendant removed the case to this Court based on diversity jurisdiction on October 23, 2018. (Id.). On November 8, 2018, Defendant filed an Answer with counterclaims against Plaintiffs for breach of contract, negligent misrepresentation, and unjust enrichment, and raised as its Ninth Affirmative Defense that this action should be transferred pursuant to 28 U.S.C. § 1404. On February 14, 2019, Defendant filed the instant motion to transfer this case to the Northern District of New York pursuant to 28 U.S.C. § 1404, arguing: (1) that the services agreement governing the parties' relationship contains a valid forum-selection clause, and (2) that the public interest factors articulated by the United States Court of Appeals for the Third Circuit in Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995) weigh in favor of transfer. (See generally Def.'s Br., ECF No. 14-2). Plaintiffs oppose transfer, arguing that it is premature, and that pretrial fact discovery is necessary to determine whether the services agreement actually

governs the parties' entire business relationship. (See generally Pls.' Opp'n Br., ECF No. 15). Defendant's motion is fully briefed, (ECF Nos. 14, 15, 16), and ready for resolution.

## II. LEGAL STANDARD

28 U.S.C. § 1404(a) governs a motion to transfer venue. The statute provides, in pertinent part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). In a motion to transfer pursuant to § 1404(a), "the moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum." Santi v. National Business Records Management, LLC, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (citing Jumara v. State Farms Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

When evaluating whether to transfer an action pursuant to § 1404(a), the Court must, as a preliminary matter, consider whether the plaintiff could have brought the suit in the proposed forum. Santi, 722 F. Supp. 2d at 606; 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it might have been brought . . . ."). If venue would be proper in that forum, the Court must then consider whether the three factors expressly enumerated in § 1404(a) favor transfer: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Wm. H. McGee & Co., v. United Arab Shipping Co., 6 F. Supp. 2d 283, 288 (D.N.J. 1997). The Third Circuit has clarified, however, that the transfer analysis should not be limited to those three factors; rather, courts should consider "'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" Tischio v. Bontex,

3

Inc., 16 F. Supp. 2d 511, 519 (D.N.J. 1998) (quoting Jumara, 55 F.3d at 879). To that end, the Third Circuit has established a list of private and public interest factors that District Courts evaluate when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, 55 F.3d at 879-80.

Another factor, which the Court must consider here, is the presence of a forum-selection clause, which "is treated as a manifestation of the parties' preferences as to a convenient forum" and is "entitled to substantial consideration." Manopla v. Raymours Furniture Co., Inc., No. 17-7649 (BRM) (LHG), 2018 WL 3201800, at *2 (D.N.J. June 29, 2018) (quoting Jumara, 55 F.3d at 880) (internal quotation marks omitted). "If a forum-selection clause is valid, the plaintiff bears the burden of 'demonstrating why they should not be bound by their contractual choice of forum.'" Id. (quoting Park Inn Int'l, LLC v. Mody Enters., Inc., 105 F. Supp. 2d 370, 377 (D.N.J. 2000)). "A forum-selection clause is considered presumptively valid and enforceable unless the party objecting to its enforcement makes a strong showing of unreasonableness." Id. (citing Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000)). "A party can establish 'unreasonableness' only if: (1) '[the clause] is the result of fraud or overreaching,' (2) 'enforcement would violate a strong public policy of the forum,' or (3) 'enforcement would . . .

result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.'" Id. (quoting Cadapult Graphic Sys., Inc., 98 F. Supp. 2d at 565).

Additionally, "[w]here a motion to transfer venue is based on a forum-selection clause, the Court must assume the parties' private interests 'weigh entirely in favor of the preselected forum.'" Id. (quoting Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 64 (2013)). Thus, the Court can only consider the public interest factors, and cannot consider arguments about the parties' private interests. Id. "A party seeking to avoid a forum-selection clause has the burden of establishing that public interests disfavoring the transfer outweigh the parties' choice [of forum]." Id. (citing Atlantic Marine Constr. Co., 571 U.S. 63-64); see also Partners of Massachusetts, LLC v. Fantasia, No. 15-7960 (KSH) (CLW), 2016 WL 7476355, *5 (D.N.J. Dec. 29, 2016).

### III. DISCUSSION

#### A. Venue is Proper in the United States District Court for the Northern District of New York Pursuant to 28 U.S.C. § 1404(a)

In the first step of its § 1404(a) transfer analysis, this Court must determine whether Plaintiffs could have brought this case in Defendant's proposed forum, the United States District Court for the Northern District of New York. If not, then the Court may not transfer the case to that District pursuant to 28 U.S.C. § 1404(a). Defendant discussed the venue issue in its moving brief, (Def.'s Br. at 3-5, ECF No. 14-2), and Plaintiffs did not address it. (See generally Pls.' Opp'n Br., ECF No. 15).

28 U.S.C. § 1391 governs venue in the United States District Court. See 28 U.S.C. § 1391(a)(1) ("Except as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States"). § 1391(b)(1) provides that "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district court is located." In turn, § 1391(c) states, in

pertinent part, that for venue purposes, an entity "shall be deemed to reside, if a defendant, in any district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

Here, Defendant represents that it is headquartered in Albany, New York, which is within the Northern District of New York. (Decl. of Benjamin Elmore ("Elmore Decl.") ¶¶ 3, 8, ECF No. 14-1). Indeed, in the Complaint, Plaintiffs allege that Defendant maintains its principal place of business in Albany. (Compl. ¶ 5, ECF No. 1). As the record reflects that Defendant is headquartered in Albany, New York, it was subject to personal jurisdiction in the Northern District of New York at the time Plaintiffs filed this action and, consequently, resided in that District for venue purposes. The Court therefore finds that Plaintiffs could have commenced this case in the Northern District of New York, and that the Court may transfer this matter to that District pursuant to 28 U.S.C. § 1404(a) if the transfer would otherwise be appropriate.[1]

### B. Plaintiffs Fail to Show that the Forum-Selection Clause is Invalid and that Enforcement of the Forum-Selection Clause Would Be Unreasonable

Defendant contends that when it hired Plaintiffs in 2015 to perform consulting services, the parties entered into Defendant's Master Subcontractor Services Agreement (the "2015 Agreement") governing the parties' general business relationship. (Def.'s Br. at 2, ECF No 14-2); (Elmore Decl. ¶ 4). Defendant attaches to its moving brief a copy of the 2015 Agreement signed by Datta on behalf of 360 MarTechSol on April 27, 2015. (Elmore Decl. Ex. A, ECF No 14-1). The 2015 Agreement is not signed by Defendant, though Defendant certifies that the 2015

---

[1] In addition to arguing that venue is proper under 28 U.S.C. § 1391(b)(1), Defendant also argues that venue is proper under 28 U.S.C. § 1391(b)(2), which states, in relevant part, that "[a] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." (See Def.'s Br. at 4, ECF No. 14-2). As Plaintiff did not address this argument in its opposition, (see generally Pls.' Br., ECF No. 15), and the Court already concluded above that venue is proper in the Northern District of New York under § 1391(b)(1), the Court need not evaluate whether venue is also proper under § 1391(b)(2).

Agreement was in effect for the time period that Plaintiffs provided services to Defendant. (See id.); (Elmore Decl. ¶ 4, ECF No. 14-1). The 2015 Agreement contains a Governing Law provision, which reads:

> **Governing Law.** This Agreement is entered into and will be interpreted and enforced pursuant to the laws of the State of New York, without regard to conflict of laws principles. The parties agree that all disputes arising in any way out of this Agreement shall be heard exclusively in, and the parties irrevocably consent to jurisdiction and venue in, the federal or state courts located in New York, except Twin Technologies may seek relief in any court of competent jurisdiction to protect or enforce its intellectual property and proprietary rights.

(Elmore Decl. Ex. A. § 12(b), ECF No. 14-1).

In opposition to Defendant's motion to transfer, Plaintiffs do not argue that the 2015 Agreement is unenforceable or that the forum-selection clause is invalid or unreasonable. (See generally Pls.' Opp'n Br., ECF No. 15). Rather, Plaintiffs oppose transfer on the basis that it is premature. (Id. at 1). Plaintiffs argue that without allowing the parties to first engage in pretrial fact discovery, the Court cannot determine whether a valid forum-selection clause exists because the record is unclear as to what written agreement or agreements govern the parties' business relationship. (Id. at 1-2). Plaintiffs base their argument on an email dated August 7, 2018, from Benjamin Elmore ("Elmore"), Defendant's Chief Executive Officer, to Datta, in which Elmore wrote, in relevant part:

> My note to you was just to memorialize what we discussed and agreed to when we talked. Your reversal from that point, and now the flippant note you sent me today, has me going back to our initial discussions, before we decided to work together. We had multiple meetings that were both through [sic] and exhaustive. We discussed where we both were headed and how your assistance with Twin's goals might fit in your personal plans. In the end, we thought it would be good to run a short initial engagement to test a number of our assumptions. We took great care in structuring and documenting that engagement before we got started. That was part of the reason the engagement went okay, so despite some distractions, the results were enough for us to consider moving forward. **Unfortunately, neither of us memorialized what moving forward would mean. Unlike the first engagement we never took the time to develop another Service Agreement.** That leaves us with our discussions over time and the misunderstandings that have developed.

7

(Id. at 5); (Cert. of Aman Datta ("Datta Cert.") Ex. 1, ECF No. 15-1) (emphasis added). Plaintiffs posit that the emphasized language above demonstrates that it is unclear whether the 2015 Agreement governed the parties' entire business relationship from 2015 to 2018, and whether the 2015 Agreement "governs or applies to the Unpaid Invoices." (Pls.' Opp'n Br. at 5-6, ECF No. 15). Plaintiffs also argue that pursuant to Section 1(a) of the 2015 Agreement, whenever Defendant engaged Plaintiffs to perform consulting services, the parties were to execute written Service Addenda "specifying the services to be performed . . . along with any terms and conditions that apply to the particular engagement and that differ from or supplement the general terms and conditions found [in the 2015 Agreement]." (Id. at 8); (Elmore Decl. Ex. A. § 1(a), ECF No. 14-1). These Service Addenda, Plaintiffs claim, may alter the forum-selection clause found in the 2015 Agreement.

In reply, Defendant argues that the "engagements" to which Mr. Elmore refers in his August 7, 2018 email means the "informal Service Addendums," which cover the "structure, timing, terms, and amounts of payments to be made to Plaintiffs," but otherwise amend neither the 2015 Agreement nor its forum-selection clause. (Def.'s Reply Br. at 4, ECF No. 16).

The Court finds that Plaintiffs have not met their burden of "demonstrating why they should not be bound by their contractual choice of forum." Park Inn Int'l, LLC v. Mody Enters., Inc., 105 F. Supp. 2d 370, 377 (D.N.J. 2000). Plaintiffs consented to the 2015 Agreement's forum-selection clause when Datta signed the 2015 Agreement on April 27, 2015. Plaintiffs then continued to perform consulting services for Defendant through June of 2018. While Plaintiffs are not satisfied that this Agreement governs the parties' entire three-year business relationship and speculate that other Agreements or Service Addenda that contain different forum-selection clauses may exist, Plaintiffs attach only one other Agreement to their opposition brief. (See Cert. of John D. Coyle ("Coyle Cert.") Ex. A, ECF No. 15-2). That Agreement is another Master

8

Subcontractor Agreement (the "2018 Agreement") between the parties, signed by Datta on July 3, 2018.[2] (Id.). The 2018 Agreement appears to contain identical Terms and Conditions as the 2015 Agreement, including an identical Governing Law provision that identifies New York state and federal courts as the exclusive venue to hear disputes arising out of the Agreement. (Id. § 12(B)). As Datta signed both the 2015 and the 2018 Agreements as Chief Executive Officer of 360 MarTechSol, Plaintiffs thereby agreed to litigate exclusively in New York state or federal courts. Moreover, Plaintiffs do not argue that the Governing Law provisions are unreasonable or that the Agreements themselves are invalid. Accordingly, Plaintiffs' arguments do not overcome the presumption that the forum-selection clause is valid and reasonable. Manopla, 2018 WL 3201800, at *2.

### C. Plaintiffs Fail to Show that the Public Interest Factors Disfavor Transferring This Action to the United States District Court for the Northern District of New York

Having determined that venue for this case would be suitable in the Northern District of New York, and that a valid forum-selection clause exists, the Court must next balance the public interest factors relevant to Defendant's transfer application. As discussed above, the Third Circuit provided a list of such factors in Jumara. 55 F.3d at 879-80. Those factors include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home and the public policies of the fora;" and (5) "the familiarity of the trial judge with the applicable state law in diversity cases." Id.

While the Court typically also considers the private interest factors articulated in Jumara, the presence of a valid forum-selection clause requires the Court to "assume the parties' private

---

[2] Like the 2015 Agreement, the 2018 Agreement is not signed by Defendant.

9

interests 'weigh entirely in favor of the preselected forum.'" Manopla, 2018 WL 3201800, at *2 (quoting Atlantic Marine Constr. Co., 571 U.S. at 64). Accordingly, the Court need not address the private interest factors here. The Court reiterates that Plaintiffs retain "the burden of establishing that the public interests disfavoring the transfer outweigh the parties' choice [of forum]." Id.; see also Partners of Massachusetts, LLC, 2016 WL 7476355 at *5.

Plaintiffs do not address Jumara or any of the public interest factors in their opposition brief, and therefore have not met their burden to establish that the parties' choice of forum does not control. The Court declines to undertake that analysis for them, as "public-interest factors will rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." Atlantic Marine Const. Co., 571 U.S. at 64. Accordingly, the Court finds that Plaintiffs fail to establish that Jumara's public interest factors disfavor transferring this action to the Northern District of New York.

## IV. CONCLUSION

Because venue for this case would be suitable in the Northern District of New York, and because Plaintiffs have not set forth arguments demonstrating why they should not be bound by their contractual choice of forum, Defendant's motion to transfer, (ECF No. 14), is hereby **GRANTED**. This matter shall be transferred to the United States District Court for the Northern District of New York. An appropriate form of Order accompanies this Opinion.

JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Katharine S. Hayden, U.S.D.J.